1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                               ----oo0oo----

11  THOMAS LEE WILLIAMS, by and
    through his Guardian ad litem,
12  Darius Williams,                    Case No. 2:07-CV-1787-FCD-EFB

13             Plaintiff,

14      v.                              <u>MEMORANDUM AND ORDER</u>

15  CITY OF WEED, CHRIS YOUNG, an
    individual, STEVEN SHANNON, an
16  individual, MARTIN NICHOLAS,
    an individual
17
               Defendants.
18

19                               ----oo0oo----

20      This matter is before the court on defendants City of Weed,

21  Chris Young ("Young"), Steven Shannon ("Shannon"), and Martin

22  Nicholas' ("Nicholas") (collectively "defendants") motion to

23  dismiss plaintiff's First, Second, Fourth, and Fifth Causes of

24  Action pursuant to Federal Rule of Civil Procedure 12(b)(6).

25  Plaintiff Estate of Thomas Lee Williams[1] ("plaintiff") opposes

26  _____

27       [1]    On April 22, 2008, the Estate of Thomas Lee Williams
    was substituted as the plaintiff in this litigation due to
28  plaintiff Thomas Lee Williams' ("Williams") death. (<u>See</u> Mem. &

                                      1

the motion.  For the reasons set forth below,[2] defendants' motion
is GRANTED in part and DENIED in part.

**BACKGROUND**

This is a civil rights action in which plaintiff alleges
that Williams was beaten by defendant police officers, whose
failure to provide him necessary medical care resulted in death.
Plaintiff alleges that on or about September 6, 2006, defendants
Young and Shannon performed a traffic stop on Williams, who was
driving a vehicle without a functioning licence plate light.
(First Am. Compl. ("FAC"), filed Oct. 15, 2008, ¶ 11.)  According
to Shannon's report, Williams placed something in his mouth and
began to chew; Shannon suspected that Williams was attempting to
swallow contraband and ordered him to spit the item out and exit
the vehicle.  (Id. ¶ 12.)  Williams did not respond and reached
down to unbuckle his seat belt.  (Id.)  Plaintiff alleges that
Young subsequently reached into the vehicle through a driver's
side window, grabbed Williams by the neck, and slammed Williams'
head into the steering wheel, rendering him unconscious.  (Id. ¶
13.)  Young and Shannon then pulled Williams from the vehicle,
threw him to the ground, and dropped a knee onto Williams' head.
(Id.)  Williams was subsequently handcuffed behind his back and
dragged to the location of the officers' patrol vehicle.  (Id.)

Plaintiff further alleges that during the time that Shannon
and Young were with Williams, Williams stopped breathing and

---

Order [Docket #38], filed Apr. 22, 2008.)

[2]     Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. Local Rule 78-230(h).

suffered irreversible brain damage when Shannon and Young allowed him to lie unconscious on the road without attempting to remove the item from his mouth or timely obtain emergency medical assistance. (<u>Id.</u> ¶ 14.)  Plaintiff alleges that Williams laid unconscious and not breathing on the roadway before emergency medical aid was eventually summoned. (<u>Id.</u>)  Williams was transported to a hospital, where it was discovered that he had suffered a catastrophic anoxic brain injury. (<u>Id.</u>)  Subsequently, when Williams' condition did not improve, he was transferred to a sub-acute hospital, where he remained in a coma. (<u>Id.</u>)  On November 24, 2007, Williams died. (Notice of Suggestion of Death [Docket #19], filed Feb. 14, 2008.)

### STANDARD

On a motion to dismiss, the allegations of the complaint must be accepted as true. <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." <u>United</u>

1  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
2  Cir. 1986).

3        Ultimately, the court may not dismiss a complaint in which
4  the plaintiff has alleged "enough facts to state a claim to
5  relief that is plausible on its face." Bell Atlantic Corp. v.
6  Twombly, 127 S. Ct. 1955, 1974 (2007).  Only where a plaintiff
7  has not "nudged [his or her] claims across the line from
8  conceivable to plausible," is the complaint properly dismissed.
9  Id.  "[A] court may dismiss a complaint only if it is clear that
10 no relief could be granted under any set of facts that could be
11 proved consistent with the allegations." Swierkiewicz v. Sorema
12 N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King &
13 Spalding, 467 U.S. 69, 73 (1984)).

14                            **ANALYSIS**

15       Defendants move to dismiss plaintiff's First, Second,
16 Fourth, and Fifth Causes of Action on the basis that plaintiff's
17 claims for relief under 42 U.S.C. § 1983 are not founded upon a
18 cognizable constitutional right.

19       Pursuant to 42 U.S.C. § 1983:

20       Every person who, under color of any statute,
         ordinance, regulation, custom, or usage . . . subjects,
21       or causes to be subjected, any citizen of the United
         States or other person within the jurisdiction thereof
22       to the deprivation of any rights, privileges, or
         immunities secured by the Constitution and laws, shall
23       be liable to the party injured in an action at law,
         suit in equity, or other proper proceeding for redress.
24

25 Section 1983 confers no substantive rights itself, but rather,
26 "provides remedies for deprivations of rights established
27 elsewhere." City of Oklahoma City v. Tuttle, 471 U.S. 808, 816
28 (1985).

                               4

1   "To state a section 1983 claim, the plaintiff must allege

2   that (1) the conduct complained of was committed by a person

3   acting under color of state law; and (2) the conduct deprived the

4   plaintiff of a constitutional right."  L.W. v. Grubbs, 974 F.2d

5   119, 120 (9th Cir. 1992) ("Grubbs I").  Plaintiff alleges that

6   defendants were acting under color of state law.  Defendants,

7   however, contend that their conduct did not deprive Williams of a

8   constitutional right; specifically, they argue that Williams was

9   not entitled to a constitutional right to receive medical care

10  from defendant police officers.[3]

11  **I.   Claims Against Police Officers**

12      In its first and second claims for relief, plaintiff alleges

13  that defendant police officers' actions and inaction in failing

14  to provide medical care were done in disregard of Williams' due

15  process rights under the Fourth, Fifth, and Fourteenth Amendments

16  of the United States Constitution[4] and resulted in physical and

17

18      [3]   In its opposition to defendant's motion, plaintiff
    mischaracterizes the court's order allowing plaintiff to amend
19  its complaint.  (Pl.'s Opp'n to Defs.' Mot. ("Opp'n") [Docket #
    63], filed Dec. 26, 2008.)  Plaintiff states, "While the
20  defendants oppose the motion on the basis that the defendants had
    no duty to provide medical care to the prostrate and unconscious
21  Mr. Williams, the court disagreed by allowing plaintiff to file
    the amendment."  (Id.)  However, the court did not rule upon the
22  sufficiency of plaintiff's claims in its order permitting
    amendment of plaintiff's complaint.  Rather, the court expressly
23  provided that "nothing in this order precludes defendants from
    testing the legal or factual sufficiency of plaintiff's claims at
24  a later stage in the litigation."  (Mem. & Order [Docket # 59],
    filed Oct. 14, 2008.)
25
        [4]   The court's order is limited to the sufficiency of
26  plaintiff's claims under the Fourteenth Amendment.  In its
    amended complaint, plaintiff alleges that Williams was
27  constitutionally entitled to receive medical assistance pursuant
    to the Fourth, Fifth, and Fourteenth Amendments.  (FAC ¶¶ 17,
28  26.)  In its Opposition to Defendant's Motion to Dismiss,

5

unnecessary injury, severe and needless pain, suffocation, mental
and emotional anguish, and death.[5] (FAC ¶¶ 14-15, 17, 23-26.)

    In general, the state is not liable for its omissions.
DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189,
195 (1989).  The Due Process Clause is a "limitation on the
State's power to act," but does not impose an affirmative
"guarantee of certain minimal levels of safety and security."
Id.  Consistent with these principles, the Supreme Court has
"recognized that the Due Process Clause[] generally confer[s] no
affirmative right to governmental aid, even where such aid may be
necessary to secure life, liberty, or property interests of which
the government itself may not deprive the individual." Id. at
196.  However, there are exceptions to the general rule that a
state's failure to protect and provide aid does not constitute a
violation of the Due Process Clause.  Huffman v. County of Los
Angeles, 147 F.3d 1054, 1058-59 (9th Cir. 1998) (addressing the
danger creation exception and the special circumstances
exception).

---

however, plaintiff did not provide any argument or authority for
the proposition that a party is constitutionally entitled to
receive medical assistance pursuant to either the Fourth or Fifth
Amendment.  The court interprets plaintiff's silence as non-
opposition to defendant's motion to dismiss plaintiff's Fourth
and Fifth Amendment claims to the extent they arise out of the
failure to provide medical care.  Accordingly, defendants' motion
to dismiss plaintiff's Fourth and Fifth Amendment claims
regarding an alleged constitutional right to receive medical
assistance under the circumstance in this case is GRANTED.

    [5]   Plaintiff's first claim for relief also seeks relief
for alleged excessive force used in violation of the Fourth
Amendment; however, since defendants limit their motion to the
alleged failure of the officers to provide medical care, the
court does not address the sufficiency of plaintiff's claim
regarding excessive force.

6

1    The danger creation exception exists where the state
2 affirmatively places the plaintiff in a dangerous situation.
3 Grubbs I, 974 F.2d at 121.  In examining whether an officer
4 places an individual in danger, the court focuses primarily on
5 whether the officer left the individual in a situation that was
6 more dangerous than the one in which he found the individual.
7 Munger v. City of Glasgow Police Department, 227 F.3d 1082, 1086
8 (9th Cir. 2000).  "The critical distinction is not . . . an
9 indeterminate line between danger creation and enhancement, but
10 rather the stark one between state action and inaction in placing
11 an individual at risk."  Penilla v. City of Huntington Park, 115
12 F.3d 707, 710, (9th Cir. 1997) (holding that plaintiff
13 sufficiently pled a constitutional claim where officers found
14 plaintiff in need of emergency care, but subsequently cancelled a
15 call to the paramedics, dragged plaintiff into his home, and left
16 him unsupervised).

17    It is not sufficient for the plaintiff to demonstrate that
18 the state official was grossly negligent.  L.W. v. Grubbs, 92
19 F.3d 894, 899-900 (9th Cir. 1996) ("Grubbs II").  Rather, "the
20 plaintiff must show that the state official participated in
21 creating a dangerous situation, and acted with deliberate
22 indifference to the known or obvious danger in subjecting the
23 plaintiff to it."  Id. at 900.  "'Deliberate indifference' is a
24 stringent standard of fault, requiring proof that a municipal
25 actor disregarded a known or obvious consequence of his actions."
26 Kennedy v. City of Ridgefield, 439 F.3d 1055, 1064 (9th Cir.
27 2006) (quoting Christie v. Iopa, 176 F.3d 1231, 1240 (9th Cir.
28 1999)).

1    Where an officer places an individual in a more dangerous
2  position and acts with deliberate indifference with respect to
3  the individual's physical security, the officer intrudes upon the
4  individual's liberty interest protected by the Due Process Clause
5  of the Fourteenth Amendment.  <u>Wood v. Ostrander</u>, 879 F.2d 583,
6  588-90 (9th Cir. 1989) (holding that officer could be held liable
7  under § 1983 where he left stranded, in a high-crime area, a
8  female passenger of a car who subsequently accepted a ride from a
9  stranger and was raped); <u>see also</u> <u>Munger</u>, 227 F.3d 1082 (holding
10  that officers could be held liable for the hypothermia death of a
11  drunk patron of a bar who was ejected from the bar on a cold
12  night and ordered not to drive anywhere).

13    Assuming the allegations of the complaint are true, and
14  giving plaintiff the benefit of every reasonable inference to be
15  drawn from the allegations of the complaint, plaintiff has
16  sufficiently alleged that defendant police officers placed
17  Williams in a more dangerous situation and acted with deliberate
18  indifference with respect to Williams' physical security.
19  Specifically, plaintiff alleges that defendant police officers
20  slammed Williams' head into the steering wheel, dropped a knee
21  onto his head, and handcuffed him behind his back.  Plaintiff
22  asserts that defendants' conduct rendered him unconscious, unable
23  to breathe, and unable to remove the bag from his mouth.
24  Further, defendant police officers did not attempt to remove the
25  bag from Williams' mouth, did not attempt to resuscitate him, and
26  did not immediately call for emergency assistance.  Plaintiff
27  asserts that defendant police officers failed to take these
28  actions even though it was clear that Williams was unconscious,

1  not breathing, and in the midst of a catastrophic anoxic brain

2  injury.   Taking plaintiff's allegations as true and drawing all

3  reasonable inferences therefrom, defendant police officers placed

4  Williams in a more dangerous situation and acted with deliberate

5  indifference in failing to provide medical care to Williams,

6  ignoring a known or obvious consequence of their actions by

7  allegedly standing idle as Williams suffocated on the bag of

8  contraband.

9       In their motion to dismiss, defendants rely on <u>Estate of</u>

10 <u>Amos v. City of Page</u>, 257 F.3d 1086, 1091 (9th Cir. 2001), in

11 arguing that there is no constitutional right to competent rescue

12 services.   However, the facts in <u>Amos</u> are distinguishable from

13 the facts of our case.   In <u>Amos</u>, police officers responded to the

14 site of an auto accident that decedent fled from on foot, and

15 decedent's estate sought to hold police officers liable for their

16 failed rescue attempt to locate decedent.   <u>Id.</u> at 1089-90.   The

17 Ninth Circuit found that the police officers in <u>Amos</u> did not take

18 any type of affirmative action that placed decedent in greater

19 danger, as there was no interaction between the officers and

20 decedent; before the police arrived at the accident scene,

21 decedent wandered away from the scene and into the desert under

22 his own recognizance.   <u>Id.</u> at 1091.   The Court held that the lack

23 of affirmative action on behalf of the officers precluded

24 application of the danger creation exception.   <u>Id.</u> at 1091-92.

25 However, unlike <u>Amos</u>, in this case plaintiff sufficiently alleged

26 that due to direct, physical contact between defendant police

27 officers and Williams, Williams was placed in a more dangerous

28 situation than the one in which the officers found him.

1   Accordingly, defendants' motion to dismiss plaintiff's

2   Fourteenth Amendment claim against defendant police officers is

3   DENIED.[6]

4   **II.   Claims Against City of Weed & Police Chief Nicholas**

5   Plaintiff's fourth claim alleges that defendants City of

6   Weed and Police Chief Nicholas ("Nicholas") created, adopted,

7   instituted, or maintained practices, customs or policies of

8   failing to educate its police officers in emergency life saving

9   procedures, how and when to request emergency medical care for

10  detainees with serious needs, and techniques used by law

11  enforcement to remove objects from the throat and mouth of

12  detainees.  (FAC ¶ 36.)  Plaintiff's fifth claim alleges that the

13  City of Weed and Nicholas created, adopted, instituted, and

14  maintained a custom, policy, or practice of failing to budget

15  funds to provide Weed police officers with training and education

16  in proper use of force against detainees and/or how to provide or

17  call for timely medical care to detainees with serious medical

18  needs.  (Id. ¶ 40.)

19  A plaintiff may hold a municipality liable under section

20  1983 if his injury was inflicted pursuant to city policy,

21

22

23

24

25   [6]   Plaintiff also argues that the special relationship
    exception is applicable to the facts alleged in the complaint.
26  Because the court concludes that plaintiff has sufficiently pled
    a claim under the danger creation exception, it does not reach
27  the merits of this argument.  Moreover, the court notes that its
    holding is limited to the specific facts of this case; the court
28  does not reach the issue of whether an individual has a general,
    constitutional right to medical assistance.

1   regulation, custom, or usage.[7]   See Monell v. Department of
2   Social Services of New York, 436 U.S. 658, 690-91, 694 (1978).  A
3   policy of inadequate police training may serve as the basis for
4   section 1983 liability only where "the failure to train amounts
5   to deliberate indifference to the rights of persons with whom the
6   police come into contact," and where the identified training
7   deficiencies are "closely related" to the plaintiff's ultimate
8   injury.   See City of Canton v. Harris, 489 U.S. 378, 388-91
9   (1989).

10      The Ninth Circuit has explicitly stated that "a claim of
11  municipal liability under section 1983 is sufficient to withstand
12  a motion to dismiss 'even if the claim is based on nothing more
13  than a bare allegation that the individual officers' conduct
14  conformed to official policy, custom, or practice.'"   Lee v. City
15  of Los Angeles, 250 F.3d 668, 682-83 (9th Cir. 2001) (quoting
16  Karim-Panahi v. Los Angeles Police Dep't, 831 F.2d 621, 624 (9th
17  Cir. 1988).

18      Plaintiff alleges that defendant police officers' conduct
19  conformed to the *practices, customs, or policies* of failing to
20  educate and train its police officers.  (FAC ¶ 36) (emphasis
21  added.)  Further, plaintiff alleges that defendant police
22  officers' conduct conformed to the *custom, policy, or practice* of
23  failing to budget sufficient funds to provide City of Weed police
24  officers with training and education. (Id. ¶ 40) (emphasis
25  added.)  In short, plaintiff's claims of municipal liability

26  ───────────────
27       [7]    To the extent plaintiff asserts a claim against Chief
    Nicholas in his official capacity, that claim is, as a matter of
    law, asserted against the City of Weed itself.  Brandon v. Holt,
28  469 U.S. 464, 471-72 (1985).

11

1  against the City of Weed allege that the individual officers'
2  conduct conformed to an official policy, custom, or practice that
3  was the moving force behind Williams' injuries.  Accepting the
4  allegations of the complaint as true and drawing all reasonable
5  inferences therefrom, plaintiff has pled sufficient facts to
6  allege that the City of Weed has a practice, custom, or policy of
7  failing to budget and train its police officers to adequately
8  respond to emergency situations where an officer has, through his
9  affirmative actions, placed an individual at risk of greater
10  harm.  As such, defendants' motion to dismiss plaintiff's claims
11  against defendants' City of Weed and Nicholas is DENIED.

**CONCLUSION**

13     For the foregoing reasons, defendant's motion to dismiss
14  plaintiff's claims is GRANTED in part and DENIED in part.

15     IT IS SO ORDERED.

16  DATED: February 3, 2009

     _____
     FRANK C. DAMRELL, JR.
     UNITED STATES DISTRICT JUDGE